Jonathan M. Rotter (SBN 234137)
Danielle L. Manning (SBN 313272)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: jrotter@glancylaw.com
Email: dmanning@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class*

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SHARAE CASEY, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

  vs.

DOCTOR'S BEST, INC.,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

**CLASS ACTION COMPLAINT**

1. VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq*.);

2. VIOLATIONS OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750, *et seq*.);

3. VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code §§ 17500, *et seq*.);

4. BREACH OF WARRANTY;

5. UNJUST ENRICHMENT.

**DEMAND FOR JURY TRIAL**

Plaintiff, Sharae Casey ("Plaintiff"), brings this action against Doctor's Best, Inc. ("Doctor's Best" or "Defendant") and alleges on information and belief, except as to the allegations that pertain to the Plaintiff, which are based on personal knowledge, as follows:

## INTRODUCTION

1.      Market experts estimate the size of the global dietary supplements market in 2019 to be $123.28 billion, expanding at 8.2% compound annual growth rate.  In 2019, North America accounted for 38% of the total market share in terms of revenue. Glucosamine is one of the most commonly purchased dietary supplements, which some researchers believe will grow to a market of more than $750 million by 2022.

2.      Glucosamine is commonly sold in two formulations: glucosamine sulfate ("Glucosamine Sulfate") and glucosamine hydrochloride ("Glucosamine Hydrochloride").

3.      Many consumers choose Glucosamine Sulfate because it is believed to be the more effective version of glucosamine. It also commands a premium on price.

4.      Plaintiff purchased a bottle of Doctor's Best Glucosamine Sulfate 750mg, a dietary supplement manufactured and sold by Defendant.  The product Plaintiff purchased states on its ingredient label that each two-capsule serving contains 1500mg of Glucosamine Sulfate.  However, laboratory testing confirms that the product Plaintiff purchased does not, in fact, contain any Glucosamine Sulfate.

5.      Doctor's Best is selling dietary supplements that are simply not what they claim to be.

6.      Plaintiff brings this class action on behalf of herself and all purchasers in California of any products sold and/or supplied by Defendant that represent on their labeling that they contain Glucosamine Sulfate ("Glucosamine Sulfate Products"), for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; violations of the California Consumers Legal Remedies Act

CLASS ACTION COMPLAINT

("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; and violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. (the "California Class"). Plaintiff also brings this class action on behalf of herself and all purchasers nationwide of the Glucosamine Sulfate Products for breach of warranty and unjust enrichment.

7.     Plaintiff demands a combination of damages and injunctive relief.

## **PARTIES**

8.     Plaintiff, Sharae Casey, is a citizen of California domiciled in Los Angeles County.

9.     Defendant Doctor's Best, Inc. is incorporated in Delaware and headquartered in Irvine, California. Defendant sells and/or supplies various Doctor's Best brand dietary supplements to consumers through retailers nationwide.

10.     Defendant makes many claims on its website, including:

- "Physician-founded in 1990, Doctor's Best is a science-based nutritional supplement company, offering more than 200 products, made primarily with branded ingredients that are thoroughly researched, manufactured to the highest quality standards, and rigorously tested every step of the way—from raw materials to finished product. We use only cGMP-certified manufacturing facilities. Doctor's Best is committed to transparency through education and communication and strives to be crystal clear in what we offer, why and how we offer it." https://www.drbvitamins.com/our-difference/ingredient-partners    (last visited July 1, 2020).

- "Doctor's Best seeks out superior-quality ingredients that have been cultivated, studied, and developed all over the world. To deliver results consistent with research, we strive to use trademarked, branded ingredients in our products, matched to the specific ingredient and strength studied in the clinical studies. We then not only verify the quality

of the raw materials used, but we test the finished product as well — added assurance that you'll never find substitutes in Doctor's Best." https://www.drbvitamins.com/our-difference/science-quality (last visited July 2, 2020).

- "Of course the integrity of the ingredients and the effectiveness of the product depend on the quality of manufacturing procedures. We choose our manufacturing facilities with care—only certified cGMP facilities pass our rigorous requirements—and we personally monitor every product throughout the production cycle to ensure it meets the highest quality standards." https://www.drbvitamins.com/our-difference/manufacturing (last visited July 2, 2020).

- "Doctor's Best products are quality tested and manufactured in the United States using highly qualified cGMP manufacturers and raw material ingredients. Doctor's Best sources raw materials from around the world and ingredients are subject to the intense testing and verification regardless of geography of origin." https://www.drbvitamins.com/learn/faq (last accessed July 2, 2020).

## JURISDICTION AND VENUE

11.   This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $5 million, inclusive of punitive damages and attorneys' fees and exclusive of interest and costs, and is a class action of more than 100 potential Class members in which some Class members are citizens of a state different from Defendant.

12.   Defendant's Glucosamine Sulfate Products are available for sale nationwide through non-party retailers such as Amazon.com. The State of California accounts for approximately 12% of the national population. Accordingly, upon information and belief, there are class members who are citizens of states other than California, and such class members comprise more than two thirds of the proposed

1   nationwide class.

2        13.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because

3   Plaintiff resides in and Defendant has transacted substantial business within this

4   District within the meaning of 28 U.S.C. § 1391, and because a substantial part of the

5   events giving rise to the claims alleged herein occurred in this District.

6                              **FACTUAL ALLEGATIONS**

7   **Glucosamine Sulfate and Glucosamine Hydrochloride**

8        14.    Glucosamine is one of the most common dietary supplements available.

9   As of 2012, Glucosamine and Chondroitin in combination were the second most used

10  natural products by U.S. adults. https://www.nccih.nih.gov/health/using-dietary-

11  supplements-wisely (last visited April 1, 2020). The market has only grown since then.

12       15.    Consumers generally take glucosamine supplements in order to help treat

13  the symptoms of joint pain, osteoarthritis, and rheumatoid arthritis, or to preserve joint

14  health.

15       16.    These supplements are commercially available in the forms of

16  Glucosamine Sulfate, Glucosamine Hydrochloride, and N-acetyl glucosamine.

17       17.    Glucosamine Sulfate has demonstrated clinical effectiveness for certain

18  conditions, while Glucosamine Hydrochloride and other forms of glucosamine have

19  not. Indeed, in a 2019 recommendation, a working group of the European Society for

20  Clinical and Economic Aspects of Osteoporosis, Osteoarthritis and Musculoskeletal

21  Diseases stated that it "affords a strong recommendation to the use of prescription

22  crystalline glucosamine sulfate (pCGS) as Step 1 long-term background therapy for

23  the management of knee [osteoarthritis], ***and discourages the use of other***

24  ***glucosamine formulations***."  Bruyère *et al.*, "An updated algorithm recommendation

25  for the management of knee osteoarthritis from the European Society for Clinical and

26  Economic Aspects of Osteoporosis, Osteoarthritis and Musculoskeletal Diseases

27  (ESCEO)," *Seminars in Arthritis and Rheumatism*, Vol. 49, Issue 3, pp. 337-50 (Dec.

28

CLASS ACTION COMPLAINT

2019) (emphasis added). While the evidence in favor of Glucosamine Sulfate instead was "unequivocal," several studies showed that many products labeled as Glucosamine Sulfate in fact contained Glucosamine Hydrochloride "with the addition of sodium sulfate to get a misleading 'sulfate' labeling." *Id.* at 6.

18.    The National Institutes of Health advises that there "are several kinds of glucosamine products. The most research showing benefit is for products that contain glucosamine sulfate. Products that contain glucosamine hydrochloride do not seem to work as well."  https://medlineplus.gov/druginfo/natural/807.html (last visited May 29, 2020). Indeed, the National Institutes of Health further advises that "[g]lucosamine hydrochloride is used for osteoarthritis, rheumatoid arthritis, glaucoma, a jaw disorder called temporomandibular disorder (TMD), joint pain, and many other conditions, *but there is no good scientific evidence to support these uses*. . . .  Some researchers believe that glucosamine hydrochloride might not work as well as glucosamine sulfate. They think *the 'sulfate' part of glucosamine sulfate is the important factor* because sulfate is needed by the body to produce cartilage." https://medlineplus.gov/druginfo/natural/747.html (last visited May 29, 2020) (emphasis added).

19.    Similarly, the Mayo Clinic notes: "[t]here are several forms of glucosamine, including glucosamine sulfate, glucosamine hydrochloride and N-acetyl glucosamine. These supplements are not considered interchangeable." https://www.mayoclinic.org/drugs-supplements-glucosamine/art-20362874 (last visited May 29, 2020).

20.    It is widely accepted that while Glucosamine Sulfate and Glucosamine Hydrochloride "have some similarities . . . they may not have the same effects when taken as a dietary supplement. Most of the scientific research on glucosamine has involved glucosamine sulfate."        https://www.webmd.com/vitamins/ai/ingredientmono-807/glucosamine-sulfate (last visited March 31, 2020). "Some products in the US that are labeled glucosamine sulfate are actually glucosamine hydrochloride with added sulfate. This

1 product will likely have different effects than one containing glucosamine sulfate . . .
2 . Some researchers believe that glucosamine hydrochloride might not work as well as
3 glucosamine        sulfate."        https://www.webmd.com/vitamins/ai/ingredientmono-
4 747/glucosamine-hydrochloride (last visited March 31, 2020).

5       21.    Accordingly, the common perception of Glucosamine Sulfate is that it
6 performs better than Glucosamine Hydrochloride or placebo treatments.

7       22.    Private companies have picked up this message and promote
8 Glucosamine Sulfate over Glucosamine Hydrochloride.  Indeed, Defendant has posted
9 a "Scientific Fact Sheet" to its website touting the advantages of Glucosamine Sulfate,
10 stating, among other things: "Doctor's Best Glucosamine Sulfate contains pure
11 glucosamine sulfate, as confirmed by HPLC testing. . . . Glucosamine sulfate has been
12 thoroughly researched over the last 20 years. Experimental studies and human clinical
13 trials convincingly demonstrate that orally consumed glucosamine sulfate promotes
14 healthy joint function. . . . The effectiveness of glucosamine sulfate for joint health
15 has      been      shown      in      double-blinded,      placebo-controlled      research."
16 https://www.drbvitamins.com/docs/pub/Glucosamine_Sulfate_FS.pdf (*last visited*
17 July 9, 2020).

18 **Plaintiff's Experience with Defendant's Product**

19       23.    Defendant sells and/or supplies products that are represented to include
20 Glucosamine Sulfate to the public in California and nationwide, including through
21 non-party retailers such as Amazon.com.

22       24.    Defendant's various Glucosamine Sulfate Products include Glucosamine
23 Chondroitin MSM + Hyaluronic Acid (150 Capsules); Synergistic Glucosamine MSM
24 Formula (180 Capsules); Glucosamine Chondroitin MSM (240 Capsules);
25 Glucosamine Chondroitin MSM (120 Capsules); Glucosamine Sulfate 750mg (180
26 Capsules);      Glucosamine      Chondroitin      MSM      (360      Capsules);      Vegan
27 Glucosamine/Chondroitin/MSM (120 Veggie Caps); Vegan Glucosamine Sulfate

28

CLASS ACTION COMPLAINT

with GreenGrown Glucosamine® 750mg (180 Veggie Caps). Each of these products, in the Supplement Facts panel of its label, represents that it contains Glucosamine Sulfate 2KCl (but not Glucosamine Hydrochloride).

25.    Accordingly, a reasonable person would believe that the contents of the bottles contain, exclusively, the ingredients listed on the label, specifically, Glucosamine Sulfate.

26.    Defendant's Glucosamine Sulfate 750mg and Vegan Glucosamine Sulfate with GreenGrown Glucosamine® 750mg products have the words "Glucosamine Sulfate" displayed prominently on the front of label, in addition to on the Supplement Facts panel.

27.    Following the QR code on the label of Doctor's Best Glucosamine Sulfate 750mg (the product Plaintiff purchased) leads to the following statement by Defendant: "Doctor's Best Glucosamine Sulfate supports joint structure and function and supplies healthy joints with proteoglycans, which contribute to healthy joints and connective tissues. Doctor's Best Glucosamine Sulfate contains pure, sodium-free, potassium stabilized glucosamine sulfate as confirmed by HPLC testing. The purified glucosamine sulfate is stabilized with potassium chloride." *See* https://www.drbvitamins.com/products/glucosamine-sulfate-750mg/drb-00086#sthash.z7w6YnNx.dpbs (last visited July 2, 2020).

28.    On July 1, 2020, Defendant's Glucosamine Chondroitin MSM (120 Capsules), Glucosamine Chondroitin MSM (360 Capsules), Glucosamine Chondroitin MSM + Hyaluronic Acid (150 Capsules), and Glucosamine Sulfate 750mg (180 Capsules) were the #2, #20, #21, and #42 best-selling products, respectively, in the Chondroitin & Glucosamine Combination Nutritional Supplements category on Amazon.com. Additionally, on July 1, 2020, Defendant's Synergistic Glucosamine MSM Formula (180 Capsules) was the #42 best-selling product in the Glucosamine Nutritional Supplement category on Amazon.com.

CLASS ACTION COMPLAINT

29.   Plaintiff has taken glucosamine supplements since approximately 2017, in hopes of preserving the health of her joints.

30.   On or about March 6, 2020, Plaintiff purchased a bottle of Doctor's Best Glucosamine Sulfate 750mg via non-party Amazon.com. She did so in reliance on the accuracy of its label, and specifically Defendant's representation that it contained Glucosamine Sulfate.

31.   In June 2020, Plaintiff's counsel sent some of the contents of the bottle that Plaintiff had purchased, and some of which she had consumed, to a laboratory for analysis. The lab's "Report of Analysis" concluded that the primary composition of the capsules consisted of Glucosamine Hydrochloride and Potassium Sulfate. The analysis found no trace of Glucosamine Sulfate, contrary to the claims on the product label.

32.   The lab's analysis, which used Fourier-transform infrared spectroscopy to identify isolated crystals in the Doctor's Best Glucosamine Sulfate 750mg capsules, did not detect Glucosamine Sulfate.  Other available tests that may be used to detect the presence or amount of glucosamine, such as High-Performance Liquid Chromatography with FMOC-Su Derivatization, are not appropriate or reliable because they fail to distinguish between Glucosamine Sulfate and Glucosamine Hydrochloride. FITR has been used in academic literature to distinguish the Glucosamine Sulfate forms. *See, e.g.*, M. Foote & M. Mullholland, "Classification of chondroitin sulfate A, chondroitin sulfate C, glucosamine hydrochloride and glucosamine 6 sulfate using chemometric techniques," 38 J. Pharmaceutical and Biomedical Anal. 397 (2005) (using FITR to distinguish between Glucosamine Sulfate and Glucosamine Hydrochloride, inter alia).

33.   Considering that Defendant claims that its products are "rigorously tested every step of the way"; that it "verif[ies] the quality of the raw materials used" and "test[s] the finished product as well"; that its products' "ingredients are subject to . . .

1 | intense testing and verification"; and most specifically, that its "Glucosamine Sulfate
2 | contains pure glucosamine sulfate, as confirmed by HPLC testing," Plaintiff's testing
3 | has thus revealed that Defendant is intentionally selling and/or supplying products that
4 | it knows to be fake.

5 |      34.   Plaintiff suffered damage and detriment as a result of Defendant's
6 | misrepresentations. Plaintiff purchased Doctor's Best Glucosamine Sulfate 750mg,
7 | one of Defendant's Glucosamine Sulfate Products, because she believed it contained
8 | Glucosamine Sulfate. Had the product label truthfully disclosed that it did not contain
9 | Glucosamine Sulfate, Plaintiff would not have been willing to pay any sum of money
10 | for the product, and would not have purchased the product.

11 |      35.   Furthermore, products containing Glucosamine Sulfate demand a
12 | premium on top of cost.

13 |      36.   To date, Defendant continues to produce Glucosamine Sulfate Products,
14 | touting the same core compound, Glucosamine Sulfate.

15 |      37.   As a result of the uncertainty regarding the contents of Glucosamine
16 | Sulfate Products, Plaintiff is, as yet, unwilling to purchase the products again.
17 | However, Plaintiff would consider doing so if she were assured that the product label
18 | was truthful and the product bottle actually contained Glucosamine Sulfate, as
19 | represented.

20 |      38.   Consumers cannot afford to have each and every purchase of
21 | Glucosamine Sulfate Products lab-tested. It is thus not practicable for all consumers
22 | of Defendant's Glucosamine Sulfate Products to determine the provenance of each
23 | bottle of the product, particularly the individual manufacturing lot that the bottle came
24 | from. Plaintiff, and others similarly situated, continue to be harmed, having no
25 | sustainable means of verifying the contents of the Glucosamine Sulfate Products.

26 | **CLASS ACTION ALLEGATIONS**

27 |      39.   Plaintiff brings this suit as a class action on behalf of herself and all other

28 |

CLASS ACTION COMPLAINT

similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

40.    Plaintiff seeks to represent the following Classes:

- **<u>Nationwide Class</u>**: All persons in the United States who purchased a dietary supplement labeled as containing Glucosamine Sulfate sold and/or supplied by Defendant other than for purposes of resale and within the applicable statutes of limitations ("Nationwide Class Period").

- **<u>California Class</u>**: All persons in the state of California who purchased a dietary supplement labeled as containing Glucosamine Sulfate sold and/or supplied by Defendant other than for purposes of resale and within the applicable statutes of limitations ("California Class Period"; together with the Nationwide Class Period, the "Class Periods").

41.    Excluded from the Classes is Defendant, its parents, subsidiaries and affiliates, directors and officers.

42.    The members of the Classes are so numerous that joinder is impracticable.  It is believed that at a minimum, thousands of persons nationwide purchased Defendant's Glucosamine Sulfate Products during the Class Periods. Moreover, thousands more will continue to purchase the products if Defendant's practices are not stopped. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail, email, and/or publication through, among other things, the distribution records of Defendant (and, to the extent applicable, third party retailers and vendors).

43.    Plaintiff's respective claims are typical of the claims of the Nationwide Class and the California Class: she purchased a dietary supplement labeled as containing Glucosamine Sulfate sold and/or supplied by Defendant during the Class Periods and sustained damages as a result of Defendant's conduct.

44.    Plaintiff will fairly and adequately represent and protect the interests of

the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature.

45. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes, including, but not limited to:

- whether Defendant's Glucosamine Sulfate Products contain Glucosamine Sulfate;

- whether Defendant represented that its Glucosamine Sulfate Products contained Glucosamine Sulfate, when they did not;

- whether Defendant's acts and practices in connection with the promotion and sale of products labeled as containing Glucosamine Sulfate violated the California UCL, CLRA, or FAL;

- whether Defendant was unjustly enriched as a result of Defendant's conduct;

- whether Defendant's conduct damaged members of the Classes and, if so, the measure of those damages;

- whether Defendant's acts and practices in connection with the production, manufacture, promotion and/or sale of Glucosamine Sulfate Products should be enjoined; and

- whether the California UCL, CLRA, or FAL should apply to all respective Nationwide and/or California Class members.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress

CLASS ACTION COMPLAINT

1  for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be
2  encountered in the management of this litigation which would preclude its
3  maintenance as a class action.

4      47.    Class certification is also appropriate under Federal Rule of Civil
5  Procedure 23(b)(2) because the Defendant has acted on grounds that apply generally
6  to the Classes, so that final injunctive relief or corresponding declaratory relief is
7  appropriate respecting the Classes as a whole.

8      48.    Class members have suffered and will suffer irreparable harm and
9  damages as a result of Defendant's wrongful conduct.

### CAUSES OF ACTION

### COUNT I
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Class)**

14     49.    Plaintiff hereby incorporates by reference the allegations contained in
15  paragraphs 1 to 48.

16     50.    Plaintiff brings this claim on behalf of herself and the California Class.

17     51.    Plaintiff asserts this claim for unlawful, unfair, and fraudulent business
18  practices; and unfair, deceptive, untrue and misleading advertising.

19     52.    Defendant's conduct is "unlawful" under the UCL because it violates the
20  California Legal Remedies Act (as discussed below) and the Food, Drug, and
21  Cosmetic Act ("FDCA") by misbranding products labeled as containing Glucosamine
22  Sulfate.

23     53.    Defendant's conduct is "unfair" under the UCL because it is immoral,
24  unscrupulous, unethical, oppressive, and substantially injurious to consumers of
25  products labeled as containing Glucosamine Sulfate that have been sold and/or
26  supplied by Defendant by representing that they contain Glucosamine Sulfate when
27  they do not.

28

54.     Defendant's conduct is "fraudulent" because Plaintiff, the California Class, and the public generally are likely to be deceived by Defendant's misbranding of its Glucosamine Sulfate products by representing that they contain Glucosamine Sulfate when they do not.

55.     Defendant's continuing course of conduct establishes unfair, deceptive, untrue and misleading advertising by misbranding its Glucosamine Sulfate products as containing Glucosamine Sulfate when they do not.

56.     Plaintiff was deceived into purchasing a product she otherwise would not have, causing her to suffer economic damages equal to the purchase price paid, or another amount to be proven at trial.

57.     Plaintiff and the other members of the Class have been and continue to be injured as a direct and proximate result of Defendant's violations of the UCL.

58.     Plaintiff is entitled to pursue a claim against Defendant on behalf of the Class pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17205 for restitution, disgorgement, and other equitable relief to remedy Defendant's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

59.     Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant is guilty of fraud and malice by intentionally misbranding its Glucosamine Sulfate products and by intending to cause injury to the Plaintiff and the California Class.

## COUNT II
### Violations of the California Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, *et seq*.
### (On Behalf of the California Class)

60.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 48.

61.     Plaintiff brings this claim on behalf of herself and the California Class.

13

CLASS ACTION COMPLAINT

62.     Plaintiff is a "consumer" as defined in Cal. Civ. Code § 1761(d).

63.     Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

64.     Glucosamine Sulfate constitutes "goods" under Cal. Civ. Code § 1761(a).

65.     Plaintiff's purchase was a "transaction" under § 1761(e).

66.     The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods. . . to any consumer," which occurs when, *among other instances*, a person: "Represent[s] that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have," § 1770(a)(5); and "Advertis[es] goods or services with intent not to sell them as advertised," § 1770(a)(9).

67.     Plaintiff and the other members of the Class have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the CLRA.

68.     Plaintiff is entitled to pursue a claim against Defendant on behalf of the Class to enjoin Defendant from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

69.     Under the requirements of California Civil Code §1782(a), Plaintiff will serve on Defendant a CLRA notice letter.  If Defendant does not rectify these issues within the time period provided by the CLRA, Plaintiff will amend this Complaint to assert claims for additional relief.

### <u>COUNT III</u>
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On Behalf of the California Class)**

70.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 48.

71.     Plaintiff brings this claim on behalf of herself and the California Class.

72.     Plaintiff asserts this claim for the unlawful inducement into an obligation and purchase of products that represent that they contain Glucosamine Sulfate that have been sold and/or supplied by Defendant due to Defendant's statements in advertising that are untrue and misleading, and which Defendant knew or should have known were untrue and misleading.   Defendant misbranded its products that are labeled as containing Glucosamine Sulfate by representing that they contain Glucosamine Sulfate when they do not.   These representations are objectively false and therefore likely to deceive members of the public.

73.     Plaintiff and the other members of the Class have been and continue to be injured as a direct and proximate result of Defendant's violations of the FAL.

74.     Plaintiff is entitled to pursue a claim against Defendant on behalf of the Class pursuant to Cal. Bus. Prof. Code § 17535 for restitution and equitable relief to remedy Defendant's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

75.     Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant is guilty of fraud and malice by intentionally misbranding Glucosamine Sulfate and by intending to cause injury to the Plaintiff and the Class.

## COUNT IV
### Breach of Warranty
### (On Behalf of the Nationwide Class,
### and in the alternative, the California Class)

76.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 48.

77.     Defendant warranted in its labeling, selling, and/or supplying of Glucosamine Sulfate Products to retailers and/or consumers in California and nationwide that the products contain Glucosamine Sulfate.

78.     Plaintiff and members of the Classes purchased Defendant's Glucosamine Sulfate Products based on this warranty.

CLASS ACTION COMPLAINT

79.   Defendant's Glucosamine Sulfate Products do not, in fact, contain Glucosamine Sulfate.

80.   Plaintiff and the other members of the Classes were injured and suffered damages as a direct and proximate result of Defendant's breach of warranty because: (1) they purchased Glucosamine Sulfate based on Defendant's misleading product label; and (2) the product did not have the composition, attributes, characteristics, or value that Defendant promised.

**<u>COUNT V</u>**
**Unjust Enrichment and/or Restitution**
**(On Behalf of the Nationwide Class,**
**and in the alternative, the California Class)**

81.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 48.

82.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, and in the alternative, the California Class.

83.   Plaintiff alleges that products that represent that they contain Glucosamine Sulfate that were and are sold and/or supplied by Defendant for retail sale to consumers do not contain Glucosamine Sulfate.

84.   By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold dietary supplements that were mislabeled in a manner that was unfair, unconscionable, and oppressive.

85.   Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. Therefore, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

86.   As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

87.   Defendant's unjust enrichment is traceable to, and resulted directly and

proximately from, the conduct alleged herein.

88.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of fees and rates on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner.  Defendant's retention of such funds, under circumstances making it inequitable to do so, constitutes unjust enrichment.

89.     The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Classes.  Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by them.

90.     A constructive trust should be imposed upon all wrongful or inequitable proceeds received by Defendant traceable to Plaintiff and members of the Classes.

91.     Plaintiff and members of the Classes have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court award the following relief:

- Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiff as representative of the Classes, and designate the undersigned as Class counsel;

- Award Plaintiff and the Classes monetary damages;

- Award Plaintiff and the Classes equitable, declaratory, and/or injunctive relief, as requested herein;

- Award Plaintiff and the Classes restitution and/or disgorgement;

- Award Plaintiff and the Classes punitive damages;

- Grant Plaintiff and the Classes payment of the costs of prosecuting this action, including expert fees and expenses;

CLASS ACTION COMPLAINT

- Grant Plaintiff and the Classes payment of reasonable attorneys' fees;
- Grant such other relief as the Court may deem just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and the Classes demand a trial by jury on all issues so triable.

DATED:  July 22, 2020                    Respectfully submitted,

                                         By:  */s/ Jonathan M. Rotter*
                                         Jonathan M. Rotter (SBN 234137)
                                         Danielle L. Manning (SBN 313272)
                                         **GLANCY PRONGAY & MURRAY LLP**
                                         1925 Century Park East, Suite 2100
                                         Los Angeles, California 90067
                                         Telephone: (310) 201-9150
                                         Facsimile: (310) 201-9160
                                         Email: jrotter@glancylaw.com
                                         Email: dmanning@glancylaw.com

                                         OF COUNSEL:

                                         Carl L. Stine
                                         Matthew Insley-Pruitt
                                         **WOLF POPPER LLP**
                                         845 Third Avenue
                                         New York, NY  10022
                                         Telephone: (212) 759-4600
                                         Facsimile: (212) 486-2093
                                         Email: cstine@wolfpopper.com
                                         Email: minsley-pruitt@wolfpopper.com

                                         *Attorneys for Plaintiff and the Proposed Class*