UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 8:20-cv-01325-JLS-JDE

SHARAE CASEY V. DOCTOR'S BEST, INC.

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 37)**

Before the Court is an unopposed Motion for Preliminary Approval of Settlement and Class Certification.  (Mot., Doc. 37; Mem., Doc. 38.)  The Motion asks the Court to: (1) preliminarily approve a proposed settlement of this class action; (2) approve the form and manner of giving notice to the class; (3) preliminarily certify the class of purchasers of "Glucosamine Sulfate" labeled products manufactured by Defendant; and (4) schedule the fairness hearing to determine whether the settlement, class certification, and Plaintiff's Counsel's application for attorney fees and expenses should be given final approval. (Mot., at ECF 2.)  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  Having reviewed and considered the papers, the Court GRANTS Plaintiff's Motion and sets a fairness hearing for July 8, 2022 at 10:30 a.m.

## I.    BACKGROUND

On July 22, 2020, Plaintiff Sharae Casey ("Plaintiff") filed a putative class action complaint (the "Complaint") against Doctor's Best, Inc. ("Doctor's Best") in the United States District Court for the Central District of California, Case No. 8:20-cv-01325-JLS-JDE.  (Compl., Doc. 1.)

The Complaint takes issue with Doctor's Best's marketing and labeling of dietary supplements as containing Glucosamine Sulfate.  (*Id.,* ¶ 6.)  Plaintiff alleges that Doctor's Best sells nutritional supplements containing glucosamine hydrochloride and potassium sulfate that are mislabeled as containing Glucosamine Sulfate (the "Products").  (*Id.,* ¶¶ 23-38.)  Plaintiff contends that she would not have been willing to pay any sum of money for the Product had it been labeled truthfully, and she would not have purchased the Product.  (*Id.,* ¶ 34.)  The Complaint alleges claims for: (1) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (3) violations of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Warranty; and (5) Unjust Enrichment and/or Restitution.  (*Id.* ¶¶ 49-91.)

2

Plaintiff seeks to recover, on behalf of a class of all purchasers who purchased the Products in the United States between July 22, 2016 and the date of the entry of this order (excluding purchases made for purpose of resale), the dollar amount of the price that is attributable to the alleged misrepresentations.  (*Id.* ¶ 40; Mem. at 3; Proposed Settlement Agreement ("Settlement Agreement"), Doc. 37-1, ¶ 1.3.)

Doctor's Best denies all of Plaintiff's allegations and charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Complaint.  (Settlement Agreement, ¶ 1.4.) Doctor's Best denies that any person has suffered harm or damage by result of any alleged conduct, statement, act, or omission of Doctor's Best.  (*Id.*)  It also denies that the present action meets the requisites for certification as a class action under Rule 23 of the Federal Rules of Civil Procedure, except for purposes of settlement, or that the evidence is sufficient to support a finding of liability on any of the claims in this action.  (*Id.*)

On December 10, 2020, Doctor's Best filed a Motion to Dismiss the Complaint. (Mot. to Dismiss, Doc. 22.)  On April 9, 2021, Plaintiff filed an Opposition to the Motion to Dismiss.  (Opp., Doc. 33.)  On April 13, 2021, Plaintiff, through her Counsel, Doctor's Best, and Doctor's Best's Counsel participated in an all-day remote mediation conducted by the Honorable Edward A. Infante (Ret.) of JAMS.  (Settlement Agreement, ¶ 1.2; Mem. at 3.)  That mediation and the discussion that followed resulted in a Proposed Settlement Agreement.  (Mem. at 3.)  The Court subsequently held Doctor's Best's Motion to Dismiss in abeyance per the Parties' Notice of Settlement.  (*See* Docs. 34, 36.)

Plaintiff now submits the present Unopposed Motion for Preliminary Approval of Settlement and Class Certification.  (Mot.)  Additionally, Plaintiff subsequently filed a Reply and a Further Reply in Support of the Unopposed Motion for Preliminary Approval of Settlement and Class Certification.  (Reply, Doc. 41; Further Reply, Doc. 42.)  And after the hearing on this Motion, at the Court's request, the Parties filed supplemental briefing.  (*See* Supp Br., Doc. 44.)

### A. The Class and Class Members

The proposed "Settlement Class" is defined as "all Persons who purchased the Product in the United States, other than for purposes of resale, during the period beginning July 22, 2016 and ending on the date of the Preliminary Approval of the settlement." (Settlement Agreement, ¶ 2.34.)  The Product is defined as "any dietary supplement labeled as containing Glucosamine Sulfate offered for sale by Doctor's Best."  (*Id.,* ¶ 2.29.)

The following persons are excluded from the Settlement Class: (1) the Honorable Josephine L. Staton, the Honorable John D. Early, the Honorable Edward A. Infante (Ret.), and any member of their immediate families; (2) any government entity; (3) Doctor's Best; (4) any entity in which Doctor's Best has a controlling interest; (5) any of Doctor's Best's subsidiaries, parents, affiliates, officers, directors, employees, legal representatives, heirs, successors, or assigns; (6) any persons who timely opt out of the Settlement Class; and (7) any person that purchased the Product for resale.  (*Id.,* ¶ 2.12.)

### B. Settlement Consideration

Doctor's Best has agreed to the entry of a court order requiring that, for a period of three years beginning 90 days after the effective date of the Settlement Agreement: (i) Doctor's Best shall not represent on any labels, marketing, and advertising materials that any Product offered for sale by Doctor's Best before the effective date contains Glucosamine Sulfate, and (ii) Doctor's Best shall not represent on any labels, marketing, and advertising materials that any new Product offered for sale by Doctor's Best after the effective date contains Glucosamine Sulfate, unless it actually contains Glucosamine Sulfate.  (*Id.,* ¶ 3.1.)

In addition, settlement class members may submit claims for refunds.  Doctor's Best will provide settlement class members who submit valid claims a refund of an amount equal to 60% of the purchase price for each Product package with proof of purchase, up to a maximum of twelve (12) Product packages per household.  (*Id.,* ¶ 4.5.)  As the majority

of Doctor's Best's sales are online, Plaintiff's Counsel anticipate that a relatively high number of class members may possess proof of purchase.  (Supp. Br., at 2.)  Valid claims will be paid even without proof of purchase, in the amount of $5.00 per Product package for up to a maximum of $25.00 per household.  (Settlement Agreement, ¶ 4.4.)  The Parties have also provided the Court with context for this compensation: the lowest price for the products at issue in this dispute is slightly less than $10; the highest priced product is $65.99; overall, the weighted average price of all products at issue sold online and in-person is $23.57; and the average online price for the best-selling product is $23.86.  (Supp. Br., at 2.)  In the event that a settlement class member submits valid proof of purchase for more than twelve (12) packages, the settlement class member shall receive payment for the first twelve (12) packages purchased in the class period.  (Settlement Agreement,¶ 4.5.)

The Parties have selected Kroll Settlement Administration ("Kroll") as the third-party administrator (the "Claim Administrator").  (*Id.,* ¶ 2.2; Supp. Br., at 4; Prutsman Decl., at ECF 2.)  All fees and expenses incurred by the Claim Administrator, as well as the cost of paying valid claims, will be paid by Doctor's Best.  (Settlement Agreement, ¶ 4.14.)  Additionally, all costs of notice will be paid by Doctor's Best.  (*Id.,* ¶ 5.6.)

As part of the Settlement Agreement, Plaintiff's Counsel may apply to this Court for an award of attorneys' fees, costs, and expenses.  (*Id.,* ¶ 7.1.)  Per the Further Reply and the First Amendment to the Settlement Agreement, Plaintiff's Counsel may apply to the Court for an award of attorney fees, costs, and expenses not to exceed four hundred seventy-five thousand dollars ($475,000), and Doctor's Best will not oppose or submit any evidence or argument challenging or undermining Plaintiff's application.  (Further Reply, at 1; First Amendment to Settlement Agreement, Doc. 42-1, at 1.)  Plaintiff's Counsel may also apply to this Court for payment of an incentive award to the Plaintiff.  (*Id.,* ¶ 7.2.)  These applications must be approved by the Court, and the Court will defer any ruling on the appropriateness of such awards until the final approval hearing.

5

### C.  Notice Plan

Pursuant to the Notice Plan contained within the Settlement Agreement, at least one week prior to the notice date, the Claim Administrator will establish, monitor, and if necessary, update and modify a settlement website, which shall contain the long form notice in both downloadable PDF format and HTML format; answers to frequently asked questions; a contact information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiff's Counsel; the Settlement Agreement; the signed order of Preliminary Approval; downloadable and online version of the claim form and opt out forms; and all other material filings by the Parties or the Court regarding the settlement, including Plaintiff's application for attorney fees, costs, expenses, and/or incentive award, the motion for final approval, and any other orders with respect to such applications and motions.  (*Id.,* ¶ 5.1.)  Additionally, although the Claim Administrator will have final authority over the design and operation of the settlement website, it will also permit Class Counsel, Doctor's Best, and Doctor's Best's Counsel to test the operation of the site.  (*Id.,* ¶ 5.1.)  The settlement website will remain accessible until 180 days after distribution of all the settlement benefits.  (*Id.,* ¶ 5.2.)

Additionally, the Claim Administrator shall provide email notice to settlement class members identified from the records of product retailers representing approximately 80 to 90 percent of all Product sales in the United States.  (*Id.,* ¶ 5.3; Ex. A to Settlement Agreement.)  Plaintiff shall subpoena the records of said retailers, and the Claim Administrator will follow industry-standard best practices for the email notice creation and dissemination.  (Ex. A to Proposed Settlement.)  Further, the Claim Administrator shall serve online advertisement banner ad notices through a programmatic approach, specifically targeting those who buy supplements like the ones at issue in this case.  (*Id.*)

### D.  Release

Upon final approval of the settlement, settlement class members (except those opting out in a proper and timely fashion) will release and forever discharge all released

parties from any and all actual or potential claims relating to: (i) the labeling of the products as containing Glucosamine Sulfate; (ii) any of the other marketing representations identified in the complaint; (iii) any acts or omissions that were raised or could have been raised within the scope of the facts asserted in the Complaint; (iv) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates or arises out of said events specified in this list.  (Settlement Agreement, ¶ 9.2(a).)  Moreover, the Plaintiff and her agents, assigns, attorneys, and members of her family will release and forever discharged the released parties from bringing or maintaining any and all actual or potential claims arising out of or relating to any conduct occurring on or before the preliminary approval date.  (*Id.,* ¶ 9.1.)

## II.   CONDITIONAL CERTIFICATION OF THE CLASS

The parties have stipulated to certification of a class for settlement purposes only. (*Id.,* ¶ 6.1.)  Therefore, the Court must determine whether to certify the proposed class pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

### A.  Legal Standard

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as a representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  *Id.* at 350-51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  *Id.* at 345.  Here, the parties seek a conditional certification of the class under Rule 23(b)(2) and 23(b)(3).  Rule 23(b)(2) permits maintenance of a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### B.  The Proposed Class Satisfies Rule 23(a) Requirements

#### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the proposed settlement class is defined as all persons who purchased the products at issue between July 22, 2016 and the date of preliminary approval; this includes millions of units of product sold across the country. (Mem. at 16.)  There is no doubt that the proposed settlement class meets the general class size required for numerosity.

#### 2.  Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class

members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (citations omitted).

The Plaintiff must allege that the class's injuries "depend upon a common contention" that

is "capable of classwide resolution." *Id.* at 350.  In other words, the "determination of [the

common contention's] truth or falsity will resolve an issue that is central to the validity of

each of the claims in one stroke." *Id.*  "What matters to class certification . . . is not the

raising of common questions—even in droves—but, rather, whether the capacity of a

classwide proceeding to generate common *answers* apt to drive the resolution of the

litigation." *Id.* (internal quotation marks and citations omitted).

The present action raises common questions of law or fact.  The dispute hinges on a

particular label that misrepresented the ingredients of nutritional supplements to all

members of the class in the same manner.  This necessarily raises numerous common

questions of law and fact including whether that labeling constituted an unfair, unlawful,

and fraudulent business practice and whether it amounted to false advertising.

Additionally, determining the proper measure of damages for any harm allegedly caused to

the class is a common question for all class members.  The Court agrees that the

commonality requirement is met.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's

permissive standards, representative claims are 'typical' if they are reasonably coextensive

with those of absent class members; they need not be substantially identical." *Dukes v.

Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v.

Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*, 564 U.S.

338 (2011).  As to the representative, "[t]ypicality requires that the named plaintiffs be

members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S.

147, 156 (1982)).  The commonality, typicality, and adequacy-of-representation

requirements "tend to merge" with each other. *Dukes*, 564 U.S. at 349 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

Plaintiff's claims and injuries are typical of those of the proposed settlement class, as evidenced by the fact she brings no individual claims; her claims are based only on the same legal theories as the class claims. And each of those claims derive from Doctor's Best's labeling practices.

### 4. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs allege that "[t]here are no conflicts of interest between Plaintiff and any members of the putative class," and "Plaintiff and Plaintiff's Counsel have skillfully and knowledgeably prosecuted this Action on behalf of the Class, as demonstrated by the quality of the proposed settlement." (Mem. at 18.) Additionally, Plaintiff's Motion specifies that Plaintiff's Counsel is "experienced in the prosecution and resolution of consumer class actions, [and has] carefully evaluated the merits of Plaintiff's case and the proposed Settlement." (*Id.* at 11.) Additionally, the Motion makes clear that Plaintiff and Plaintiff's counsel have vigorously litigated the action on behalf of the class and have carefully considered their litigation options. Although Plaintiff and Plaintiff's Counsel "believe they have a strong case . . . [they] are also cognizant of the significant challenges inherent in major consumer litigation challenging the labelling of nutritional supplements." (*Id.*) "Even if Plaintiff prevailed at every stage, there is the very real possibility of multiple lengthy appeals before the Ninth Circuit, which would prolong the time before the Class receives any relief," and in any case, "it is highly unlikely that Plaintiff would have

achieved a better result for the Class had it litigated this case through trial." (*Id.*) Plaintiffs have satisfied the adequacy requirement.

Accordingly, the Court finds that the proposed class for purposes of settlement satisfies Rule 23(a)'s requirements.

### C. The Proposed Class Satisfies Rule 23(b)(2) Requirements

The Plaintiff seeks to certify the class under Rule 23(b)(2), as the Settlement Agreement includes injunctive relief. (Mem. at 18.)  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks and citations omitted).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*  "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory relief against the defendant." *Id.*  "Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360-61.

Doctor's Best acted in the same manner toward all members of the proposed settlement class who purchased Glucosamine Sulfate-labeled products, and Plaintiff seeks a single injunction on behalf of all class members to prevent Doctor's Best from continuing to label products in this manner.  Classes of consumers seeking injunctive relief to end continuing deceptive practices may obtain class certification under Rule 23(b)(2), and certification does not implicate any predominance or superiority concerns. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) ("a previously deceived consumer may have standing to seek an injunction against false advertising or labeling"); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *10-*11 (N.D. Cal. May 30, 2014) (certifying Rule 23(b)(2) injunctive class of consumers who claimed Dole products were labeled as all natural in violation of various California consumer

product mislabeling statutes, explaining that "[t]his case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as Brazil requests injunctive relief prohibiting defendants from engaging in their allegedly unlawful or deceptive labeling practices") (class later decertified on other grounds).  Therefore, the Court finds that the proposed class satisfies the requirements of Rule 23(b)(2).

### D.  The Proposed Class Satisfies Rule 23(b)(3) Requirements

Plaintiff also seeks to certify the class pursuant to Rule 23(b)(3), as the Settlement Agreement also provides for monetary damages in the form of refunds to those who previously purchased allegedly improperly labeled Product.  Rule 23(b)(3) considers whether common questions of law or fact predominate over individual questions and whether a class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

### 1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues."  *Id.*  "When common issues present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

Questions of law and fact common to members of the proposed settlement class predominate over those affecting only individual members.  The questions of law and fact at issue in this case are all grounded in a common course of conduct and practices by Doctor's Best.  Settlement class members all suffered the same consequences of those practices; the only difference of fact between different class members is the units of Product each member purchased.  This difference is adequately accounted for in the

Settlement Agreement.  Accordingly, the questions of law and fact should be resolved for all members of the proposed settlement class in a single adjudication.

## 2.  Class Action Superior to Other Methods

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.*  "The overarching focus [of the superiority inquiry] remains whether trial by class representation would further the goals of efficiency and judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)).  Additionally, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).  It would not make economic sense for any individual consumer to bring an individual action where the price of a nutritional supplement product is obviously dwarfed by the cost of litigating on an individual basis; accordingly, the Court concludes that a class action is plainly superior to other methods here.

## III.   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A.  Legal Standard

To preliminarily approve a proposed class action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing.  Manual for Complex Litigation, § 21.632 (4th ed. 2004).

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted), "[t]he purpose of Rule 23(e) is to

protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). Accordingly,

> to determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'"  *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not [ ] the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks omitted).  In such circumstances, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary[.]"  *Alberto v. GMRI,*

*Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval. . . ."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union*, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially fair*, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")

In evaluating all applicable factors below, the Court finds that the proposed Settlement Agreement should be preliminarily approved.

## B. Strength of Plaintiff's case and risk, expense, complexity, and duration of further litigation

"Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the last opportunity for class members to obtain relief."  *Scott v. HSS Inc.*, 2017 WL 10378568, at *8 (C.D. Cal. Apr. 11, 2017).  Given the potential risks of further litigation, this factor therefore weighs in favor of granting preliminary approval.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV*, *Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted).

Plaintiff's Counsel are experienced in the prosecution and resolution of consumer class actions, and have "carefully evaluated the merits of Plaintiff's case and the proposed Settlement."  (Mem. at 11.)  While Plaintiff's Counsel "believe they have a strong case," they are also "cognizant of the significant challenges inherent in consumer class litigation

challenging the labeling of nutritional supplements." (*Id.*)  Indeed, even if Plaintiff prevailed at every stage, Counsel recognizes "there is the very real possibility of multiple lengthy appeals before the Ninth Circuit, which would prolong the time before the Class receives any relief." (*Id.*)

As the Court agrees that the risks of continuing further litigation in this case are substantial, it agrees that this factor favors preliminary approval of the settlement.

### C. Amount offered in settlement

The Proposed Settlement provides for substantial monetary recovery for consumers who previously purchased Doctor's Best's Glucosamine Sulfate-labeled products, and it provides real injunctive relief to address Doctor's Best's labeling practices.  (Mem. at 14-15.)  Consumers with proof of purchase will receive 60% of the price they paid for the Product, and consumers without proof of purchase will receive $5 per Product package. Plaintiff's Counsel estimates that a relatively high number of consumers may have proof of purchase, as much of Doctor's Best's business is online; additionally, the weighted average price of all products including both online and in-person sales was $23.57 during the class period.  (Supp. Br., at 2 (citing Insley-Pruitt Decl., ¶ 4).)  $5 per package is slightly more than one fifth of the price paid for the most popular product, and in light of the harm consumers are alleged to have suffered, the Court finds this monetary recovery eminently reasonable.  Additionally, the injunctive relief provided by the Settlement Agreement addresses any future harm consumers of Doctor's Best products would be likely to suffer as a result of the company's labelling practices.

### D. Extent of discovery proceedings and stage of the proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney*, 151 F.3d at 1239. Discovery can be both formal and informal.  *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (finding plaintiffs had "sufficient

information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services.").

The Court concludes that the Parties have sufficient information to make an informed decision about settlement. Prior to reaching the proposed Settlement Agreement, Doctor's Best had filed a Motion to Dismiss and Plaintiff had responded. (*See* Docs. 22, 33.) Critically, before even filing a complaint, Plaintiff sent some of the contents of one of the nutritional supplements she purchased from Doctor's Best to a laboratory for analysis, which allegedly revealed that the primary composition of the capsules consisted of Glucosamine Hydrochloride and Potassium Sulfate, rather than Glucosamine Sulfate. (Compl., ¶¶ 31-32.) The Court finds that in light of the straightforward nature of Plaintiff's claims, the extent of this fact development is sufficient for parties to accurately assess the value of the claims at issue, and it concludes that this factor favors preliminary approval.

### E.  Experience and views of counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). "On the other hand, recognizing the potential conflict of interest between attorneys and the class they represent, the Court should not blindly follow counsel's recommendations, but give them appropriate weight in light of all factors surrounding the settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Here, Plaintiff's Counsel is experienced in the prosecution and resolution of consumer class actions.  Wolf Popper LLC has focused on representing plaintiffs in class actions for a significant portion of its 75-year history, and the individual attorneys from Wolf Popper have a wealth of experience in class actions in general, as well as, in litigating dietary supplement labelling class actions in particular.  (*See* Supp. Br., at 1; Insley-Pruitt Decl., Doc. 44-3, ¶ 2; Ex. A to Insley-Puitt Decl., Doc. 44-4.)  Glancy Prongay & Murray LLP and the individual attorneys from Glancy Prongay & Murray LLP also have extensive experience in class action litigation.  (*See* Rotter Decl., Doc. 44-1, ¶¶ 3-4; Ex. A to Rotter Decl., Doc. 44-2, at 17-18, 27.)  And perhaps most significantly, counsel has obtained substantial monetary and injunctive relief in this case; accordingly, the Court finds that this factor favors preliminary approval.  (*See* Mem. at 11.)

## F.  Arm's length negotiation free from collusion

Although the "proposed settlement need not be ideal," it "must be fair, free of collusion, [and] consistent with counsel's fiduciary obligations to the class."  *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020).

The Proposed Settlement was negotiated through an all-day remote mediation with the Honorable Edward A. Infante (Ret.) of JAMS, and the agreement was reached only after the Parties had already engaged in limited motion practice.  (Mem. at 11.)  Further, at the time it was negotiated, the Proposed Settlement did not include an attorney fee agreement.  Only several months later did Plaintiff and Doctor's Best file documentation indicating that they had reached an agreement as to attorney fees and costs.  (*See* Further Reply; First Amendment to Settlement Agreement.)  This timing supports that the present settlement is not the product of collusion to benefit Plaintiff's Counsel.  (Mem. at 12.)

## G. Conclusion

As the Court concludes that the proposed settlement is fair, reasonable, and adequate, and appears to be the product of serious, informed, non-collusive negotiations, the Court will preliminarily approve the proposed settlement.

## IV.   NOTICE PROCEDURES

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994).

Plaintiff's proposed forms of notice generally comply with these requirements. The Settlement Agreement's Notice Plan provides direct notice to class members via email, based on contact information received from subpoenas to various retailers representing 80-90% of sales during the class period. (Mem. at 22.) Additionally, an online advertising campaign will provide additional notice with the goal of reaching class members for whom retailers lack contact information. (*Id.*) The settlement website will specifically, clearly, and concisely inform members of the proposed settlement class of the following: the Long Form Notice, answers to frequently asked questions, the contact information for the Claims Administrator and for Plaintiff's Counsel, the settlement agreement, the signed order of preliminary approval, the claim form and opt out forms, and all other material filings by the Parties or the Court. (Mem. at 22-23 (citing Proposed Settlement, ¶ 5.1).)

As set forth in the Notice Plan and the Proposed Order, the Claim Administrator shall do the following:

- At least seven days prior to the notice date, the Claim Administrator shall establish a settlement website, which shall contain information about the Settlement Class Members' rights; answers to frequently asked questions; the address for the Claim Administrator and addresses and telephone numbers for Plaintiff's Counsel and Doctor's Best's Counsel; the long form notice in both downloadable PDF format and HTML format with a clickable table of contents; a downloadable and online version of the claim form; a downloadable and online version of the claim form; a downloadable and

online version of the form by which settlement class members may opt out of the settlement class; the Complaint; the Settlement Agreement; and the signed order of preliminary approval.  The Claim Administrator shall add to the Settlement Website all other material filings by the Parties or the Court regarding the settlement, including Plaintiff's application for attorney fees, costs, expenses, and/or an incentive award, the motion for final approval, and any orders with respect to such applications and motions.

- The Claim Administrator shall initiate the process of providing the email notice via email to identified settlement class members in accordance with the Notice Plan as soon as practicable after the notice date.

- The Claim Administrator shall initiate the process of publishing the online advertisement notices in accordance with the Notice Plan as soon as practicable under the notice date, so that overall notice of the settlement (including the online and email notice) is reasonably calculated to apprise the settlement class members of settlement.

- The Claim Administrator shall set up the toll-free telephone number as further described in the Notice Plan.

Plaintiff has also provided the Court with copies of the proposed Class Notice.  (*See* Ex. B1, Long Form Notice, Doc. 37-1, at ECF 37-49; Ex. B2 to Proposed Settlement, Email Notice, Doc. 37-1, at ECF 51-52.)  Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

To comply with these requirements, the Court ORDERS Plaintiff to file an amended Class Notice within ten (10) days of the entry of this Order that makes the following changes:

- Clearly identifies the definition of the class certified; and
- Specifies that a class member may enter an appearance through an attorney if the member so desires.

Otherwise, the Court approves, as to form and content, notices that are substantially similar to the forms attached as B1, B2, and B3 to the Settlement Agreement as well as the changes set forth in attachments B-1 and B-2 to the Further Reply. (*See* Docs. 42-2, 42-3.)

## V.    SCHEDULE

The Court adopts the Parties' Proposed Schedule for the remaining deadlines. The schedule shall be as set forth in the table below.

| Event | Date |
|-------|------|
| Claim Filing Deadline | 3 months after Notice Date |
| Notice Date | No later than 14 days after preliminary approval order |
| Deadline for Plaintiff to move for an entry of an order of Final Approval | 49 days prior to the Final Approval hearing |
| Plaintiff's Counsel's deadline to file any motion in support of their application for attorney fees, costs, and expenses, as well as an incentive award | 49 days prior to the Final Approval hearing |
| Objection and Opt Out Deadline | 21 days after Plaintiff moves for entry of an order of Final Approval |

| | |
|---|---|
| Deadline for Defendant to file any opposition to any of Plaintiff's applications for attorney fees, costs, and expenses | 21 days after Plaintiff's Counsel applies for attorney fees, costs, and expenses, as well as an incentive award |
| Deadline for Plaintiff's Counsel to file any reply brief in support of Plaintiff's application for attorney fees, costs, and expenses, or in response to any objections to the Final Approval Motion | 14 days after the filing of any opposition to Plaintiff's motions |
| Deadline for Claim Administrator to certify to the Court that it has complied with the notice requirements set forth in the Settlement Agreement | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | **July 8, 2022 at 10:30 a.m.** |

## VI.   THIRD-PARTY ADMINISTRATOR

Prior to the hearing on this Motion, and as set forth in the Parties' Supplemental Brief, the Parties selected the claims administrator to provide notice and administrate the claims process.  (*See* Supp. Br., at 4 (citing Doc. 37-1, at ¶ 2.2).)  Counsel solicited proposals from two potential administrators, and Defendant approved the selection of Kroll Settlement Administration LLC (formerly known as Heffler Claims Group.)  (Insley-Pruitt Decl., ¶ 5.)  The Parties have also submitted to the Court information regarding Kroll's experience.  (*See* Prutsman Decl., Doc. 44-5; Ex. A to Prutsman Decl.)  The Court is satisfied that Kroll's 50 years of experience and involvement in over 3,000 class settlements indicate that Kroll is a suitable third-party claims administrator.  (*See id.*)

## VII.   CONCLUSION

For the foregoing reasons, (1) conditionally certifies the Class for settlement purposes only, (2) preliminarily approves the Settlement Agreement, (3) approves the form and method of class notice, subject to the changes discussed above, and (4) approves the appointment of Kroll Settlement Administration as the claims administrator.  The Court ORDERS the parties to file a revised version of the email Class Notice within **ten (10) days** of this Order.

The Court sets a Final Fairness Hearing for **July 8, 2022, at 10:30 a.m**. to determine whether the settlement should be finally approved as fair, reasonable, and adequate to the class members.  The Court reserves the right to continue the date of the final fairness hearing without further notice to class members.


DATED:  February 28, 2022

JOSEPHINE L. STATON

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE