UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | CASE NO. 8:20-cv-01325-JLS-JDE |
| SHARAE CASEY V. DOCTOR'S BEST, INC. | **ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR CLASS CERTIFICATION; FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF INCENTIVE PAYMENT; AND AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES (DOC. 50)** |

1

Before the Court is an unopposed Motion for Class Certification, Final Approval of Class Action Settlement, Award of Incentive Payment, and Award of Attorney Fees, Costs, and Expenses.  (Mot., Doc. 50; Mem., Doc. 51; Reply, Doc. 53.)  Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion.

### I.  BACKGROUND

The Court detailed the background facts of this action in its Order Granting Preliminary Approval of the Class Action Settlement.  (Preliminary Approval Order, Doc. 45.)  The Court assumes familiarity with those facts and does not repeat the full discussion here.

On July 22, 2020, Plaintiff Sharae Casey ("Plaintiff") filed a putative class action complaint (the "Complaint") against Doctor's Best, Inc. ("Doctor's Best"). (Compl., Doc. 1.)  Plaintiff alleges that Doctor's Best sells nutritional supplements containing glucosamine hydrochloride and potassium sulfate that are mislabeled as containing Glucosamine Sulfate (the "Products").  (*Id.* ¶¶ 23-38.)  The Complaint alleges claims for: (1) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (3) violations of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Warranty; and (5) Unjust Enrichment and/or Restitution.  (*Id.* ¶¶ 49-91.)

On April 13, 2021, Plaintiff (through her counsel), Defendant, and Defendant's Counsel participated in an all-day remote mediation conducted by the Honorable Edward A. Infante (Ret.) of JAMS.  (Settlement Agreement, Doc. 37-1, ¶ 1.2.)  During that mediation, the Parties reached a Settlement Agreement.  (*Id.*)

The Court held a preliminary approval hearing on January 14, 2022.  (*See* Doc. 43.)  Following supplemental submissions by the Parties, the Court granted

preliminary approval of that Settlement Agreement on February 28, 2022.  (*See* Preliminary Approval Order.)  In its Preliminary Approval Order, the Court conditionally certified the following Rule 23(b)(2) and 23(b)(3) class for settlement purposes (the "Class"): "all Persons who purchased the Product in the United States, other than for purpose of resale, during the period beginning July 22, 2016 and ending on the date of the Preliminary Approval of the settlement."  (*Id.* at 4 (citing Settlement Agreement ¶ 2.34); *id.* at 7-13.)

The Court also preliminarily approved the Settlement Agreement, which provides that Settlement Class Members can receive $5.00 per Product package if they do not have proof of purchase (regardless of the price paid for the Product), subject to a five (5) Product package per household maximum.  (*Id.* at 13-18; Settlement Agreement ¶ 4.4.)  With proof of purchase, Settlement Class Members can receive 60% of the purchase price per Product package (before any taxes and after any discounts), subject to a twelve (12) Product package per household maximum.  (*Id.* ¶ 4.5.)  Additionally, Doctor's Best has agreed for a period of three (3) years not to represent on any labels, marketing, or advertising materials that any Product offered for sale by it prior to the Settlement Agreement's effective date contains Glucosamine Sulfate and not to represent on any labels, marketing, or advertising material that any new Product contains Glucosamine Sulfate unless it actually contains Glucosamine Sulfate.  (*Id.* ¶ 3.1.)

Additionally, the Settlement Agreement provides that all fees and expenses incurred by the Claim Administrator—Kroll Settlement Administration LLC ("Kroll")—the cost of paying valid claims, and all notice costs will be paid by Doctor's Best.  (*Id.* ¶¶ 4.14. 5.6.)  It further provides that Doctor's Best will not challenge (and will pay) any incentive award of $5,000 or less.  (*Id.* ¶¶ 7.2, 7.3.)  Further, Doctor's Best has agreed not to oppose any application for an award of attorney fees, costs, and expenses in an amount that does not exceed four hundred

seventy-five thousand dollars ($475,000), to be paid by Doctor's Best.  (*Id.* ¶ 7.1 (as amended by Doc. 42-1).)  The Settlement Agreement is not conditioned upon Court approval of Plaintiff's fee application.

The Court also approved the Parties' proposed notice program.  (*See* Notice Approval Order, Doc. 48.)  After the Court approved the notice program, Kroll established a settlement website (https://doctorsbestglucosaminesettlement.com/).  (*See* Ferruzzi Decl., Doc. 51-3, ¶ 7.)  Kroll also oversaw the distribution of more than 75,000 direct notices to consumers' email addresses.  (*See id.* ¶ 10.)  Kroll engaged in an online notice campaign that collectively reached 90% of the target audience for a total of 11 million online impressions.  (*See* Finegan Decl., Doc. 51-4, ¶ 3.)  Additionally, Amazon issued over one million notices to customers who had purchased the product.  (*See* Cohn Decl., Doc. 51-5, ¶ 7.)

The deadline for Class Members to file exclusions, objections, and claims has passed.  The Parties have received nineteen (19) requests for exclusion, no objections, and 120,158 claim submissions, with 83,402 of those claims filed at unique households.  (Reply at 1; Ferruzzi Supp. Decl., Doc. 53-1, ¶¶ 3-5.)

II. **CONDITIONAL CERTIFICATION**

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(2) and 23(b)(3) for settlement purposes.  (*See* Preliminary Approval Order at 7-13.)

Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions as to the existence of a proper settlement class.  Therefore, the Court incorporates its class certification analysis from the Preliminary Approval Order into the current Order.

### III. FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT
#### A. Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (numbering added) (internal quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (internal quotation marks omitted).

In addition to these factors, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (emphasis in original). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests

5

and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.* (internal quotation marks omitted).

### B. Discussion

In the Preliminary Approval Order, the Court evaluated the *Staton* factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure. (*See* Preliminary Approval Order at 13-18.) The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiff's case and the risk, expense, complexity, and duration of further litigation; (2) the amount of the settlement; (3) the extent of discovery and the stage of the proceedings; and (4) the experience and views of counsel. (*Id.*) The Court was also satisfied there were no signs of collusion between the Parties. (*Id.* at 18.) Therefore, the Court incorporates its analysis from the Preliminary Approval order into the instant Order.

At the time of preliminary approval, however, the Court was not able to consider the Class Members' reaction to the proposed Settlement Agreement. It is well-established "that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal quotation marks omitted); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (same). Since the Court's preliminary approval, however, over one million notices have been sent to consumers, and targeted internet and social media advertisements have had 11 million impressions—thus adequately

notifying potential Class Members of the action and the terms of the Settlement Agreement. The Class has reacted positively, with only nineteen individuals excluding themselves, and no Class Member objections. Thus, this factor also weighs in favor of finding the Settlement Agreement fair, reasonable, and adequate.

In sum, the Court finds the proposed Settlement Agreement is fair, reasonable, and adequate after having weighed the *Staton* factors and considered the settlement as a whole. Accordingly, Plaintiff's request for final approval of the class action settlement is GRANTED.

The Court now turns to Plaintiff's requests for an incentive award, attorney fees, costs, and expenses.

### IV.   PLAINTIFF'S INCENTIVE AWARD

Plaintiff, as Class Representative, asks this Court to approve a $5,000 service award. (Mem. at 12-13.)

"A[n] [incentive] award recognizes the time and effort of the named plaintiff[] and the fact that [she] secured a recovery for absent class members. Without the named plaintiff[], this Settlement, and its benefits to the Settlement Class Members, would not have been possible." *Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *25 (N.D. Cal. Mar. 25, 2021). While "fairly typical in class action cases," a class representative "must justify an incentive award through 'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [her] award and those of the unnamed plaintiffs.'" *Amaro v. Gerawan Farming Inc.*, 2020 U.S. Dist. LEXIS 189529, at *26-*27 (E.D. Cal. Oct. 12, 2020) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008)).

Here, Plaintiff proffers her own declaration illustrating that she has provided substantial assistance in litigating this action. (*See* Casey Decl., Doc. 52.) Casey

7

avers that she "spent many hours in connection with this case, including (i) reviewing and discussing issues and documents with [her] counsel; (ii) reviewing substantive briefs filed by Class Counsel[;] (iii) communicating with Counsel on the telephone and by email; (iv) speaking with Counsel during the process of negotiations with respect to the settlement of this action (the "Settlement"); (v) reviewing the Settlement Agreement setting forth the terms of the Settlement of this lawsuit, which [she] signed; and (vii) reviewing the papers in support of the Settlement." (*Id.* ¶ 3.)

The Court finds that Plaintiff's actions taken in initiating this suit warrant the requested service award of $5,000. Class Counsel estimates that the total potential recovery is between $7.5 million and $21 million (*see* Mem. at 16); the $5,000 service award reflects between .067% and .024% of this amount, which the Court finds reasonable. *See also Congdon v. Uber Techs., Inc.*, 2019 WL 2327922, at *10 (N.D. Cal. May 31, 2019) (approving incentive award of $5,000 where award represented "just 0.25% of the total recovery").

### V.  ATTORNEY FEES

Here, Class Counsel seeks an attorney fees, expenses, and cost award of $475,000. Counsel represents that this figure represents a $305,874 lodestar with a 1.5 multiplier—for a total attorney fees award of $458,369.79— and $16,630.21 in expenses. (Mem. at 19, 24 n.5.)

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. This obligation exists irrespective of "whether the attorneys' fees come from a common fund or are otherwise paid." *Briseno v.*

*Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). There are two general approaches courts take in determining reasonable attorney fees awards: (1) the benchmark approach, and (2) the lodestar approach. The Court conducts both analyses, but finds that the lodestar approach is particularly appropriate here given the present uncertainty of the amount that will actually be paid out to Class Members.

First, a consideration of the benchmark approach favors granting counsel's request for fees. In the Ninth Circuit, the benchmark for a fee award in common fund cases is "25%" of the recovery obtained. *In re Bluetooth Headset Prods.* 654 F.3d at 942. Courts typically apply the 25% calculation to the total possible recovery—and not just the amount actually distributed—when the settlement provides for a common fund or a "claims made" process. *See Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *8 (C.D. Cal. Apr. 17, 2015) (Staton, J.) ("[T]he Ninth Circuit has held that the 25% percentage benchmark must be measured against the full fund set aside by the settlement rather than the actual payout to the class." (citing *Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)); *see also Williams*, 129 F.3d at 1027 (holding district court abused its discretion by awarding fees based on class members' claims against settlement fund rather than on a percentage of the entire fund or on the lodestar); *but see Kaupelis v. Harbor Freight Tools USA. Inc.*, 2022 WL 2288895, at *10 (C.D. Cal. Jan. 12, 2022) ("The Court has discretion in determining what constitutes the total value of the settlement in the denominator." (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015)).

In this case, Doctor's Best will pay Class Members either $5 per package or 60% of the retail price paid per package of the Product, depending on whether the Class Member provides proof of purchase and subject to limitations for each household. (Settlement Agreement ¶¶ 4.4, 4.5.) During the class period, Doctor's Best sold approximately 1.5 million units of the Products on a wholesale basis.

(Insley-Pruitt Decl., Doc. 51-2, ¶ 4.)  Currently, the Parties do not have exact information regarding the total value of claims that are valid and will be paid out. Thus, the Court looks to Plaintiff's estimates in the briefing.[1]  Plaintiff estimates that even if every Class Member submitted claims without proof for all of the units sold, this would result in a monetary benefit of $7.5 million.  (Mem. at 16.)  On the other hand, Plaintiff estimates that if all Class Members provided proof of purchase, based on the weighted average price of all the Products sold ($23.57), the total possible recovery would be approximately $21 million.  (*Id.*)  The Court agrees that in either scenario, Plaintiff's fee award would amount to significantly less than 25% of the total value of the settlement—it would account for a range between roughly 6 and 2% of the total potential recovery.  Thus, the percentage of recovery—even when considered conservatively—favors approving the fee request.

In conjunction with the benchmark method, the Ninth Circuit has identified a number of factors the Court may consider in assessing the reasonableness of an attorneys' fees request, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Song v. Thc – Orange Cty.*, 2019 U.S. Dist. LEXIS 240579, at *15 (C.D. Cal. Aug. 2, 2019).  Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

These factors also favor approval of the request for attorney fees.  First, as discussed in more detail in the Preliminary Approval Order, the Settlement Agreement achieved notable results for the Class: it obtained both monetary benefits—in the amount of either $5 per package without proof of purchase or 60%

---

[1] At oral argument, Class Counsel also agreed to provide the Court with a written update in thirty (30) days regarding the anticipated amount to be paid in claims.

10

of the purchase price with proof of purchase—and Doctor's Best has agreed as a settlement term to change its labeling practices.  (*See* Preliminary Approval Order at 16.)  While the Court expressed some concern at the Final Fairness hearing that the combination of a "claims made" settlement and a small monetary benefit can have a chilling effect on the total amount actually awarded to class members, it acknowledges that, in this case, the simplicity of making a claim and the absence of any proof-of-purchase requirement seems to have resulted in a robust response by class members.  Second, the Parties resolved this matter at a relatively early stage in the litigation, prior to completion of the briefing on Doctor's Best's Motion to Dismiss.  (Mem. at 17.)  This reflects well on counsel's skill and quality of work performed to achieve a fair settlement expeditiously.  This, in turn, reduced the risk of the contingent nature of the fee and the financial burden by Plaintiff; however, the Court finds that, in total, these factors favor approval.

In other instances, courts employ the lodestar method to determine reasonable attorney fees, and at times, courts perform a lodestar "cross check" to ensure the reasonableness of the fee award even when employing the benchmark method.  *See Wallace*, 2015 WL 13284517, at *10; *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015) ("Courts commonly—even after having decided to utilize the percentage-of-recovery method—perform a 'lodestar cross-check' by comparing the percentage-of-recovery figure with a rough calculation of the lodestar to assess the reasonableness of the percentage award." (internal quotation marks omitted)).  Moreover, when a statutory scheme provides for an award of reasonable costs and attorney fees to prevailing plaintiffs, courts should employ the lodestar method.  *See Wallace*, 2015 WL 13284517, at *10; *see also Yeagley v. Wells Fargo & Co.*, 365 Fed. Appx. 886, 887 (9th Cir. 2010) ("Under a fee-shifting statute . . ., the lodestar method is generally the correct method for calculating attorneys' fees.").  The Court finds that the use of the

lodestar method is particularly appropriate here because this is not a clear-cut common fund case; as the Court highlighted at oral argument, significant uncertainty remains with respect to the value of the settlement to the Class. Further, Plaintiff brought a count under the CLRA, which contains a fee-shifting provision, and would ordinarily be awarded fees based on the lodestar method.

To calculate the lodestar, the Court first determines whether the hourly rates sought by counsel are reasonable and then multiplies the rates by the reasonable number of attorney and staff hours billed on the case. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). In determining reasonable hourly rates, courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). As for the number of reasonable hours, the Court generally "begin[s] with the billing records the prevailing party has submitted," and excludes entries for hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

Here, Class Counsel's supporting records reflect that the attorneys invested 447.6 hours in this action for a collective lodestar of $305,874. (Insley-Pruitt Decl. ¶ 17.) From Wolf Popper LLP, Carl L. Stine, a Senior Partner, billed 99.2 hours at a rate of $895; Matthew Insley-Pruitt, a Partner, billed 108.4 hours at a rate of $825; Philip M. Black, an Associate, billed 106.2 at a rate of $475; and Melissa Gianfagna, a Paralegal, billed 16 hours at a rate of $320. (*See id.* ¶ 11.) From

Glancy Prongay & Murray LLP, Jonathan M. Rotter, a Partner, billed 64.40 at a rate of $850; Harry Kharadjian, a Senior Paralegal, billed 5.5 hours at a rate of $325; Paul Harrigan, a Senior Paralegal, billed 37.90 hours at a rate of $325; and Zabella Moore, a Senior Paralegal, billed 10 hours at a rate of $325. (See Rotter Decl. ¶ 5.)

The Court has reviewed hourly rates submitted by Class Counsel and finds they are generally reasonable. This Court has previously approved rates between $340 and $530 for associate attorneys and between $660 and $965 for partners. *See Defrees v. Kirkland*, 2018 U.S. Dist. LEXIS 125462, at *15 (C.D. Cal. July 26, 2018) (Staton, J.); *Hurtado v. Rainbow Disposal Co.*, 2021 U.S. Dist. LEXIS 105692, at *19-*20 (C.D. Cal. May 21, 2021) (Staton, J.) (approving rates of $900 for lead counsel and rates of $260 to $600 for work performed by paralegals and more junior attorneys in ERISA class action). Thus, the Court agrees that the rates sought by the partners and associates who performed work on this case are reasonable.

The Court disagrees, however, that a rate of $320 or $325 for paralegals is appropriate, taking into consideration the work performed here and the rates approved for comparable work in other cases in this district. *See Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2021 WL 1110198, at *6 (C.D. Cal. Mar. 23, 2021) (denying that rate of $290 was reasonable and awarding rate of $150 per hour for paralegal work in class action settlement); *Kaupelis*, 2022 WL 2288895 at *9 (approving rates of $250-300 for paralegals); *Vecron Exim Ltd. v. Stokes*, 2018 WL 6168021, at *2 (C.D. Cal. Aug. 31, 2018) ("With respect to the requested rates for paralegal work, the Court finds that based on its knowledge of the prevailing rates of paralegals in the Los Angeles area a $135 hourly rate would be reasonable."); *Adams v. Compton Unified Sch. Dist.*, 2015 WL 12748005, at *11 (C.D. Cal. July 16, 2015) (collecting cases and awarding paralegal fees in the range of $150-$190). That being said, the Court believes that comparable case law supports a rate of $250

per hour for each paralegal working on this action. This, in turn, however, would reduce Plaintiff's lodestar by a mere $5,125 for a total of $300,749, and would have little to no effect on Plaintiff's requested multiplier. Because the rate requested has little effect on the total fees to be awarded, produces a fee award well within the Ninth Circuit benchmark, and is not opposed by Doctor's Best, the Court will permit an award based on Plaintiff's requested rates.

The Court has also reviewed the timekeeping records provided by Class Counsel and finds that the amount of time expended litigating this action is reasonable. (*See* Ex. A to Insley-Pruitt Decl., Doc. 51-2, at 1-13; Ex. A to Rotter Decl., Doc. 51-1, at 1-14.) The Court finds that the amount of time spent was necessary for undertaking a factual and legal investigation into Plaintiff's allegations, briefing the Motion to Dismiss, drafting and negotiating the settlement, preparing the papers in support of preliminary approval, and overseeing the notice and claims process, among other tasks. (*See, e.g.*, Mem. at 22.)

"After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier." *Fronda v. Staffmark Holdings, Inc.*, 2018 U.S. Dist. LEXIS 92330, at *30 (N.D. Cal. June 1, 2018) (quotation omitted). "The lodestar amount is presumptively the reasonable fee amount and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts' that the lodestar amount is unreasonably low or unreasonably high." *Santos v. Camacho*, 2008 U.S. Dist. LEXIS 35991 at *122 (D. Guam Apr. 23, 2008) (quoting *Guarantee Mut. Life Co. v. VanGerwen*, 214 F.3d 1041, 1045 (9th Cir. 2000)). Courts have found that the following factors may support a rebuttal of that presumption: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to

acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Pagh v. Wyndham Vacation Ownership, Inc.*, 2021 U.S. Dist. LEXIS 56040, at *5 n.10 (C.D. Cal. Mar. 23, 2021).

      Here, based on the lodestar, Plaintiff is seeking a multiplier of approximately 1.5. This multiplier is well within the range of reasonable multipliers. *See, e.g, Vizcaino*, 290 F.3d at 1051 n.6 (majority of collected cases lodestar fell between 1.0 and 3.0). Given the time and labor Class Counsel contributed, particularly in the investigation of the claims prior to filing the case, the skill of counsel to obtain such a strong result at such an early stage in the proceedings, and the reputation of the firms and attorneys involved in the action, as well as the proportion of the fees sought relative to the total value of the settlement, the Court agrees that a 1.5 times multiplier is reasonable and fair. Accordingly, GRANTS Plaintiff's application for attorney fees in the amount of $458,369.79.

      Additionally, the Court finds that Class Counsel's application for expenses is reasonable. (*See* Mem. at 25.) "Counsel are entitled to a reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case." *Loomis v. Slendertone Distrib.*, 2021 U.S. Dist. LEXIS 44047, at *31 (S.D. Cal. Mar. 8, 2021). Wolf Popper submits a total of $13,632.10 in expenses for experts, court fees, office expenses, travel, legal research, and mediation. (*See* Insley-Pruitt Decl. ¶ 19.) Glancy Prongay & Murray submit a total of $2,998.11 in expenses for court filing fees, online research, and service of process. (Rotter Decl. ¶ 7.) The Court agrees these are necessary expenses comparable to those that would normally be charged to a fee paying client, and the application is granted. (Mem. at 25 (citing

*Amaro v. Gerawan Farming, Inc.*, 2020 U.S. Dist. LEXIS 189529, at *26 (E.D. Cal. Oct. 12, 2020); *Perks*, 2021 U.S. Dist. LEXIS 57272, at *24).)

### VI.   CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's request to approve the settlement.

The Court GRANTS Plaintiff's request for a $5,000 service award.

The Court GRANTS the request for costs and attorney fees. The Court approves litigation costs in the amount of $16,630.21 and attorney fees in the amount of $458,369.79 for a total award of $475,000.

Distributions to Class Members shall be made in accordance with the method outlined in the Settlement Agreement. Class Counsel is ORDERED to file a distribution status report as discussed at the hearing within thirty (30) days of the entry of this Order.

DATED:  July 11, 2022

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE